IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENÉ D. LUNA, REBECCA WYLIE and JAVIER ROBLES, individually on behalf of themselves and all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICA'S BEST CONTACTS & EYEGLASSES, INC., a Delaware corporation,<br><br>Defendant. | Case No. 11-cv-1783 |

## COMPLAINT

Plaintiffs René D. Luna, Rebecca Wylie and Javier Robles, individually on behalf of themselves and all other persons similarly situated, by their attorneys, Vincent T. Borst, Robert M. Winter, Andrés J. Gallegos and Richard Lee Stavins of Robbins Salomon & Patt, Ltd., complain of Defendant America's Best Contacts & Eyeglasses, Inc., a Delaware corporation, as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188. Plaintiffs' claims arise under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et sequitur*, Public Law 101-336, 104 Stat. 327, as amended.

2. Venue is proper in this district because Defendant caused and continues to cause injuries to Plaintiffs in this district and Defendant resides in this district.

FB2501

## THE PARTIES

3. Plaintiff René D. Luna is a quadriplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. René D. Luna resides in Chicago, Illinois.

4. Plaintiff Rebecca Wylie is a quadriplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Rebecca Wylie resides in Deerfield, Illinois.

5. Plaintiff Javier Robles is a quadriplegic who depends upon the use of a wheelchair, and is a person with a disability within the meaning of all applicable statutes. Javier Robles resides in Edison, New Jersey.

6. Defendant America's Best Contacts & Eyeglasses, Inc., ("America's Best") is a Delaware Corporation. America's Best operates more than 280 optometry center stores within the United States of America, doing business and providing optical examinations to the public under the name America's Best Contacts and Eyeglasses.

## CLASS ALLEGATIONS

7. Pursuant to Fed. R. Civ. P. 23(a), the Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The class the Plaintiffs seek to represent is composed of all disabled persons with ambulatory impairments who depend upon the use a wheelchair and are unable to obtain optometry services and care at Defendant America's Best's optometry centers, because of the failure of America's Best to comply with the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

8. The persons in the class are so numerous that joinder of all persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and the Court. Approximately 2.7 million disabled people ages 15 and older depend upon the use of

FB2501

wheelchairs in the United States. Plaintiffs are informed and believe that thousands of individuals with ambulatory disabilities who depend upon the use of wheelchairs seeking optometry services from America's Best have suffered and will continue to suffer systematic discrimination.

9. There are common questions of law and fact involved that affect the parties to be represented in that they are all being denied, or will be denied their civil rights of full and equal enjoyment of optometry services and care from America's Best, due to the barriers described herein.

10. The claims of the Plaintiffs are typical of the claims of the class because the Plaintiffs are similarly affected by the failure of America's Best to provide the legally required access to its facilities and optometry services throughout the United States.

11. The Plaintiffs are adequate class representatives because they are directly impacted by the failure of America's Best to provide access to vision care services, facilities and equipment throughout the United States. The interests of the Plaintiffs are not antagonistic to or otherwise in conflict with the interests of the class as a whole. The attorneys representing the class are experienced in representing clients in class actions and class action civil rights claims.

12. Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because America's Best has acted and/or failed to act on grounds applicable to the class as a whole, making final declaratory and injunctive relief for the class as a whole superior to all other methods of disposition.

13. Class certification is appropriate under Fed. R. Civ. P. 23 (b)(3) because questions of law and fact common to class members predominate over other available methods for the fair and efficient adjudication of this litigation.

14. Upon information and belief, the interests of members of the class in individually controlling the prosecution of a separate action is low, in that most class members would be unable to individually prosecute an action because the amounts at stake for individuals, while significant, are relatively small for most or all of the class members contrasted with the costs of prosecution. Concentrating litigation in a single forum will promote judicial efficiency by resolving common questions of law and fact in a single forum instead of across multiple courts.

15. A class action would be manageable. Individualized litigation presents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. References to Plaintiffs shall be deemed to include each named Plaintiff and each member of the class, unless otherwise indicated.

## DEFENDANT'S CONDUCT

16. A regularly scheduled comprehensive eye examination is critical to maintaining healthy eyes and healthy vision. Optometrists are qualified to administer such exams and treat many diseases and disorders of the eye. An eye exam is low cost and of high benefit to the patient. Economic, medical and moral benefits exist for every person to have an annual eye exam by an optometrist.

17. Defendant America's Best has a pattern and practice of failing to provide full and equal access to eye exams by ambulatory impaired disabled individuals who depend upon the use of wheelchairs who are seeking vision care services, by failing to remove architectural barriers that prevent full and equal enjoyment of, and access to its eye examination services, failing to provide or make available auxiliary aids and services, and failing to make reasonable

modifications to its policies, practices and procedures to ensure that disabled people with ambulatory impairments who depend upon the use of wheelchairs are provided with equal access to the facilities, equipment and services America's Best provides to its customers.

18. As a consequence of the aforesaid conducts, America's Best does not provide full and equal access for disabled people with ambulatory impairments who use wheelchairs. America's Best's employees and staff members are not able to address these barriers and provide optometry services on an equal basis to disabled persons with ambulatory impairments who depend on the use of wheelchairs, and thus such disabled persons are unable to secure comprehensive eye care services at America's Best's optometry centers that are readily available to non-disabled persons without ambulatory impairments.

19. America's Best does not provide, and it denies and continues to deny, access for disabled individuals with ambulatory impairments who depend upon the use wheelchairs by creating and failing to remove architectural barriers in the following ways:

   a. The examination chairs do not lower to facilitate the transfer of disabled ambulatory impaired persons from their wheelchairs onto the eye exam chairs;

   b. No other safe means are provided to lift disabled ambulatory impaired persons from their wheelchairs onto examination chairs, such as portable lift systems or fixed overhead lift systems;

   c. The examination chairs are fixed to the floor and cannot be moved to permit disabled ambulatory impaired persons in wheelchairs to access the eye examination equipment while seated in their wheelchairs;

   d. The examination equipment cannot be moved sufficiently to accommodate an eye examination for a person in a wheelchair;

   e. Examination rooms are too small to accommodate wheelchair access and use;

   f. Disabled persons with ambulatory impairments who depend upon the use of wheelchairs are turned away from facilities or dissuaded from seeking optometry services from America's Best when they inquire telephonically

        about the availability of vision care services for disabled persons who depend on the use of wheelchairs; and

    g.    America's Best otherwise has denied access to disabled ambulatory impaired individuals who depend upon the use of wheelchairs.

20.     The pervasive barriers to access described above make it more difficult and expensive for disabled persons with ambulatory impairments who use wheelchairs to receive adequate vision screening and care. The failure of America's Best's to remove such architectural access barriers throughout the America's Best optometry centers prevents full and equal access, subjects disabled people with ambulatory impairments who use wheelchairs to embarrassing, humiliating, and frustrating experiences, and increases the likelihood that they will not be able to secure eye care services that are available to people without ambulatory impairments.

21.     Each America's Best optometry center is a public accommodation that is covered by Title III of the ADA. 42 U.S.C. § 12181(7)(F); 28 C.F.R. § 36.104.

## EXPERIENCES OF THE NAMED PLAINTIFFS

22.     René D. Luna is a person with an ambulatory impairment. Since March 1977, René has been living with the effects of a spinal cord injury to his 5th cervical vertebra, causing quadriplegia. As a result, he utilizes a manual wheelchair. He has been wearing prescription eyeglasses since he was a teenager. On or about June and July 2007, René went to the America's Best optometry center on North Elston Avenue, in Chicago, Illinois. An optometrist told him he could not receive an eye examination unless he transferred onto their examination chair. René explained that he could not transfer himself and preferred to have the exam while in his wheelchair. The optometrist insisted that René had to transfer and asked why he didn't bring someone with him to help transfer and lectured him that it was his responsibility to bring someone to help him transfer and that there was nothing the optometrist could do. On or about March 8, 2011, René called the same America's Best optometry center in Chicago, Illinois. The

store is near René's residence. An employee scheduled René for an eye exam. René then explained that he was spinal cord injured and in a power wheelchair without the ability to independently transfer. The employee then told René he wasn't able to access the examination room due to his wheelchair, that the optometry examination chair was not movable, and as a result, René could not receive services at the store as they "just weren't equipped" to treat persons in wheelchairs.

23. Rebecca Wylie is a person with an ambulatory impairment. Rebecca has been living with the effects of Acute Transverse Myelitis, which developed when she was 7 years old, affecting her 3rd cervical vertebra, causing quadriplegia. As a result, she is dependent upon the use of a wheelchair. Rebecca has been using prescription eyeglasses since 2004. On or about January 28, 2011, Rebecca called America Best's optometry center store in Arlington Heights, Illinois, to inquire about obtaining a comprehensive vision exam. The store is close to her home. After explaining that she was in a wheelchair and unable to independently transfer, America's Best employees at the store informed Rebecca that the exam chairs could not be moved to permit her wheelchair to be positioned in place of the exam chair and access the examination equipment, and that unless she could move herself into the optometry exam chair, there was no way around the situation.

24. Javier Robles is a person with an ambulatory impairment. Javier sustained a spinal cord injury to his 5th cervical vertebra in or about April 1983, resulting in quadriplegia. As a result, Javier is required to use a wheelchair. Javier has been wearing prescription eyewear for many years. Javier was also diagnosed with Type 2 Diabetes in or about October 2008, which makes the need to obtain comprehensive eye exams particularly vital because diabetes increases the risk of vision problems. On or about February 7, 2011, Javier called the America's Best optometry center in Union, New Jersey. That America's Best store is reasonably close to

Javier's personal residence. He called the store to inquire whether the facility and its eye examination services were accessible for persons with quadriplegia and to see if he could obtain a comprehensive eye examination there. An employee at the store informed Javier that unless he was able to transfer out of his wheelchair he would not be able to obtain an eye examination there, because the exam chair was fixed to the floor and was immovable, and that Javier would have to bring a family member to help him out of his wheelchair.

## THE STATUTE AND REGULATIONS

25. At all times relevant, there was in full force and effect a statute known as the Americans with Disabilities Act, 42 U.S.C. §§ 12101 – 12189, (the "ADA"), and its implementing regulations, 28 C.F.R. §§ 36.101 – 36.608, which provide in pertinent part as follows:

    a.    No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

    b.    It shall be discriminatory to subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b) (1)(A)(i); 28 C.F.R. § 36.202(a).

    c.    It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii); 28 C.F.R. § 36.202(b).

    d.    It shall be discriminatory to impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such

      criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered. 42 U.S.C. § 12182(b) (2)(A)(i); 28 C.F.R. § 36.301(a).

  e.  It shall be discriminatory to fail to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations. 42 U.S.C. § 12182(b) (2)(A)(ii); 28 C.F.R. § 36.302(a).

  f.  It shall be discriminatory to fail to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden. 42 U.S.C. § 12182(b) (2)(A)(iii); 28 C.F.R. § 36.303(a).

  g.  It shall be discriminatory to fail to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b) (2)(A)(iv); 28 C.F.R. § 36.304(a).

## DEFENDANT'S VIOLATIONS

26. Defendant America's Best's acts and omissions alleged herein violated and continue to violate the ADA and its implementing regulations in one or more or all of the following manners:

  a.  America's Best has discriminated against Plaintiffs and the class members by denying them the opportunity for the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by America's Best.

  b.  America's Best has discriminated against Plaintiffs and the class members by denying them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of America's Best optometry centers.

  c.  America's Best has discriminated against Plaintiffs and the class members by offering or affording them services that are not equal to those services afforded to other individuals with ambulatory impairments.

FB2501

  d. America's Best has discriminated against Plaintiffs and the class members by imposing or applying eligibility criteria that screen out or tend to screen out disabled individuals with ambulatory impairments who cannot independently transfer from their wheelchairs onto examination chairs where such criteria is not necessary for the provision of optometry services.

  e. America's Best has discriminated against Plaintiffs and the class members by failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its goods, services and facilities to Plaintiffs and the class members where such modifications would not fundamentally alter the nature of its goods, services or facilities.

  f. America's Best has discriminated against Plaintiffs and the class members by failing to take such steps as may be necessary to ensure that Plaintiffs and the class members are not excluded, denied services or otherwise treated differently than other individuals because of the absence of auxiliary aids where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in an undue burden.

  g. America's Best has discriminated against Plaintiffs and the class members by failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable.

  h. America's Best has otherwise discriminated against Plaintiffs and the class members.

27. Defendant America's Best's conduct constitutes ongoing and continuing violations of the ADA. Unless restrained from doing so, America's Best will continue to violate the ADA. This conduct, unless enjoined, will continue to inflict injuries on Plaintiffs and the members of the class for which Plaintiffs and the class will have no adequate remedy at law. Therefore, pursuant to section 308 of the ADA (42 U.S.C. § 12188), Plaintiffs and members of the class are entitled to injunctive relief.

28. Plaintiffs and members of the class are entitled to reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 12205.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and members of the class pray for the following relief:

a. A preliminary injunction and a permanent injunction, prohibiting America's Best from violating the ADA, 42 U.S.C. § 12181, *et seq.*, and compelling America's Best to comply with the ADA;

b. A declaration that America's Best is operating in a manner which discriminates against disabled individuals who are ambulatory impaired who depend upon the use of wheelchairs and which fails to provide access for persons with disabilities as required by law;

c. An order certifying the case as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), and appointing Plaintiffs as class representative and their attorneys as class counsel;

d. An award of attorneys' fees and costs;

e. Such other relief as the Court deems just.

        RENÉ D. LUNA, REBECCA WYLIE and
        JAVIER ROBLES, individually on behalf of
        themselves and all other persons similarly
        situated, Plaintiffs

By:    /s/ Vincent T. Borst
            One of Their Attorneys

Vincent T. Borst (ARDC No. 06192904)
Robert M. Winter (ARDC No. 03122228)
Andrés J. Gallegos (ARDC No. 6212168)
Richard Lee Stavins (ARDC No. 02710099)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
25 East Washington Street, Suite 1000
Chicago, Illinois 60602
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
vborst@rsplaw.com
rwinter@rsplaw.com
agallegos@rsplaw.com
rstavins@rsplaw.com