**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RENÉ D. LUNA, REBECCA WYLIE and JAVIER ROBLES, individually on behalf of themselves and all other persons similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11 cv 1783 |
| v. | ) ) | Judge James B. Zagel |
| AMERICA'S BEST CONTACTS & EYEGLASSES, INC., a Delaware corporation, | ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THE JOINT MOTION TO CERTIFY AS A CLASS ACTION FOR SETTLEMENT PURPOSES AND FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs René D. Luna, Rebecca Wylie and Javier Robles ("Plaintiffs"), individually on behalf of themselves and all other persons similarly situated, and Defendant, America's Best Contacts & Eyeglasses, by their respective attorneys, have jointly moved this Honorable Court to certify this action as a class action under Rule 23(b)(2) of the Federal Rules of Civil Procedure (for settlement purposes) and to preliminarily approve the settlement of this action pursuant to the settlement agreement negotiated between the parties. This memorandum is submitted in support of that motion.

**I.     LITIGATION AND SETTLEMENT BACKGROUND**

America's Best Contacts & Eyeglasses ("Defendant" or "America's Best") is a national provider of eye care services, including providing eye examinations and selling and dispensing prescription eyewear at its approximately 340 retail store locations. Plaintiffs are persons with ambulatory disabilities who rely upon the use of wheelchairs or scooters for mobility

1

(collectively referred to as "wheelchairs" here). In the complaint filed in this action (the "Complaint"), Plaintiffs allege that they experienced a number of incidents when attempting to obtain an eye examination at certain of Defendant's retail stores which they believe violate the Americans with Disabilities Act (the "ADA"). Plaintiffs' primary allegation in this regard is their inability to utilize the existing eye examination equipment in the stores. Plaintiffs allege that the eye examination chairs in Defendant's stores are fixed in place and the essential examination equipment used in performing a comprehensive eye examination is mounted on a fixed equipment stand designed to be used by a person sitting in the examination chair. Because of this configuration, the examination equipment is effectively immovable and inaccessible to persons in wheelchairs. As a result, unless a person can sit in the examination chair, the essential examination equipment will not function for that person and he or she will not be able to obtain an eye examination. Plaintiffs allege that, given their physical disabilities, dependence on wheelchairs, and inability to independently transfer into the fixed examination chair, they cannot obtain a comprehensive eye examination at Defendant's stores equivalent to their non-disabled counterparts (or to individuals with disabilities who are able to transfer independently into Defendant's examination chairs). One effective solution to this situation is to install equipment, readily available in the marketplace, referred to as "chair glides" or "chair movers" in the examination rooms. Such devices are attached to the otherwise fixed examination chairs, which then permits the examination chair to be easily moved back from the examination equipment. Once the examination chair is moved back, a person utilizing a wheelchair can position his or her wheelchair next to the examination equipment and obtain an eye examination while remaining seated in his or her wheelchair. In essence, the parties' settlement contemplates the installation of

2

these chair glides in all of Defendant's retail stores provided that such installation is "readily achievable" as defined in the ADA's regulations.[1]

### 1. Litigation Activities.

In the Complaint filed on March 15, 2011 (Doc. No. 1), Plaintiffs alleged that America's Best engaged in a pattern and practice of failing to provide full and equal access to eye exams to persons in wheelchairs ("Ambulatory Impaired Persons") who sought vision care services by failing to remove architectural barriers that prevented full and equal enjoyment of, and access to its eye examination services, and failing to make reasonable modifications to its policies, practices and procedures to ensure that Ambulatory Impaired Persons are provided with equal access to the facilities, equipment and services America's Best provides to its customers. (Complaint ¶ 17). Plaintiffs also alleged that America's Best did not provide full and equal access for Ambulatory Impaired Persons because America's Best's employees and staff members were not able to remove those barriers and provide to Ambulatory Impaired Persons optometry services on an equal basis as offered and made readily available to non-disabled persons, and thus Ambulatory Impaired Persons were unable to secure comprehensive eye care services at America's Best's optometry centers. (Complaint ¶ 18). Plaintiffs further alleged that America's Best did not provide, and it denied and continued to deny, access for Ambulatory Impaired Persons by creating and failing to remove architectural barriers as: (a) the examination chairs did not lower to facilitate the transfer of Ambulatory Impaired Persons from their wheelchairs onto the eye exam chairs; (b) no other safe means were provided to lift Ambulatory Impaired Persons from their wheelchairs onto examination chairs, such as portable lift systems or

---

[1] In addition to this structural problem encountered by the Plaintiffs here, Plaintiffs also allege that they have experienced issues with Defendant's employees when requesting service which Plaintiffs believe are also violations of the ADA. These issues are also addressed in the settlement.

3

fixed overhead lift systems; (c) examination chairs were fixed to the floor and could not be moved to permit Ambulatory Impaired Persons to access the eye examination equipment while seated in their wheelchairs; (d) examination equipment could not be moved sufficiently to accommodate an eye examination for a person in a wheelchair; (e) examination rooms were too small to accommodate wheelchair access and use; (f) Ambulatory Impaired Persons were turned away from stores or dissuaded from seeking optometry services from America's Best when they inquired telephonically about the availability of vision care services for disabled persons who depend on the use of wheelchairs; and (g) America's Best otherwise had denied access to Ambulatory Impaired Persons. (Complaint ¶ 19). Plaintiffs alleged that these acts and omissions constituted violations of Title III of the ADA and its implementing regulations. Plaintiffs sought injunctive relief against Defendant on their own behalf and on behalf of a class of similarly situated disabled persons.

America's Best filed its Answer and Affirmative Defenses on August 15, 2011 (Doc. No. 22). America's Best generally denied liability and raised several significant affirmative defenses. In particular, America's Best claimed that: (a) "Plaintiffs seek modifications, alterations, and changes not required under applicable law because they are not readily achievable, not reasonable, not required and/or not technically feasible" (Affirmative Defense No. 2.); (b) "Plaintiffs seek modifications, alterations and changes not required under applicable law because those changes would impose an undue burden on America's Best" (Affirmative Defense No. 3); and (c) "Plaintiffs have demanded modifications, alterations and changes that would fundamentally alter the way America's Best provides its goods and services" (Affirmative Defense No. 4). In response to these Affirmative Defenses, Plaintiffs filed a motion to strike on

HA964202

September 2, 2011. (Doc. No. 24). The motion was fully briefed by the parties. The Court denied the motion to strike by minute order dated September 20, 2011. (Doc. No. 29).

Because the parties were engaged in settlement discussions by the time of the Court's order on the motion to strike, and because they were exchanging informal discovery to facilitate those discussions, the parties did not engage in formal discovery. In addition, because Defendant contemplated a settlement of this action as a class action for settlement purposes only, Plaintiffs did not previously move to certify this case as a class action. After the Court's decision on Plaintiffs' motion to strike affirmative defenses, no further formal litigation activities were undertaken except to advise the Court of the status of settlement negotiations from time to time at scheduled status hearings.

### 2.    The Settlement Negotiations

The possibility of reaching a settlement of this action was broached by the parties early in the litigation process. Thereafter, between May 2011 and June 2012, the parties engaged in significant arms-length settlement negotiations. While the general broad principles of the settlement were agreed to early in the process, namely that Defendant would install chair glides in all of its stores to the extent feasible, the parties subsequently conducted significant negotiations with respect to (a) the scope of the remediation that America's Best would agree to, (b) the timing of the remedial actions, (c) the nature of the verification and enforcement process and (d) the scope of the release applicable to the proposed settlement class. The negotiations included several face-to-face meetings between counsel for each side, a significant number of conference calls between counsel, e-mail exchanges and exchanges of letters between counsel. During that time the parties also engaged in informal discovery whereby America's Best provided Plaintiffs' counsel with information regarding the standard optometry equipment

utilized by Defendant, examination chairs and furniture Defendant utilizes and makes available to its independent optometrists, along with a listing of all of its stores and their locations. The parties eventually reached an agreement as to the principal terms of settlement in June 2012. After reaching an agreement on those principal terms, the parties began to discuss the amount of Class Counsel's fees America's best would pay, subject to Court approval. The parties subsequently reached an agreement as to this matter and worked out all remaining settlement issues resulting in a signed settlement agreement being executed on September 20, 2012.

## II.     THE TERMS OF THE SETTLEMENT AGREEMENT

The proposed settlement between the parties is incorporated in the Stipulation and Class Settlement Agreement attached as Exhibit A to this memorandum (the "Proposed Settlement Agreement" or the "Agreement"). It proposes, for settlement purposes only, the certification of this action as a class action and defines the Settlement Class as:

> all persons who (a) have an ambulatory disability for which they use wheelchairs or scooters, and (b) between the dates of March 15, 2009 and the date of entry of the Final Approval Order and Judgment were or would have been unable to obtain eye examination services and care at an America's Best Store due to a reason related to their disability or who were otherwise treated adversely due to a reason related to their disability.

(Proposed Settlement Agreement ¶ 1.20).

Under the Agreement, without admitting to liability, America's Best consents to mandatory injunctive relief requiring it to:

1.     Retain an ADA consultant to conduct surveys of 34 of its facilities for compliance with the ADA (Proposed Settlement Agreement ¶ 3);

2.     Utilize the ADA consultant to train America's Best personnel to survey the remaining facilities for compliance with the ADA (Proposed Settlement Agreement ¶ 4);

6

HA964202

3.     Install chair glide equipment in 100% of its facilities, subject to minor potential exceptions, thereby facilitating the movement of the eye examination chairs and permitting wheelchair access to the eye examination equipment, as well as undertake any additional remediation found to be necessary in the survey process (Proposed Settlement Agreement ¶ 5);

4.     Institute policies, procedures and training covering: (i) providing customer service to persons with disabilities / disability awareness training; (ii) providing optometric services to persons with disabilities / using accessible optometric equipment and furniture; (iii) purchasing and maintaining accessible optometric equipment and furniture; (iv) maintaining physical accessibility (including accessible entrances and counters); (v) effective communication for customers who are deaf or hard of hearing; (vi) service animals in places of business; and (vii) customer complaint procedures (Proposed Settlement Agreement ¶ 6);

5.     Posting notices in its facilities to remind its employees and independent optometrists of its existing practice of providing accessible eye care services to customers with ambulatory impairments and to encourage employees and independent optometrists to consult their store manager if they have any questions about this practice (Proposed Settlement Agreement ¶ 6);

In connection with this injunctive relief, America's Best has also agreed to undertake certain reporting, monitoring and quality control obligations. (Proposed Settlement Agreement ¶ 8).

Also, in addition to this injunctive relief, Defendant has agreed to pay the named Plaintiffs the amount of $10,000.00, to be distributed among them as they determine in their sole discretion in return for releasing their personal damage claims under state and local law (Proposed Settlement Agreement ¶ 7.1). (This broader release is not applicable to the Settlement

7

Class.) Defendant has also agreed to pay Plaintiffs' attorneys' fees in an amount to be approved by the Court pursuant to a fee petition. (Proposed Settlement Agreement ¶ 7.2(a) and (b)). Both of these provisions were negotiated only after Defendant had agreed to the injunctive relief specified above. Finally, Defendant has agreed to pay attorneys' fees for work conducted in verifying compliance with the Final Order after its entry, subject to certain limitations. (Proposed Settlement Agreement ¶ 7.2(c)).

In consideration for these undertakings, Defendant will be released by the Settlement Class for all claims for declaratory and injunctive relief related to: "(i) a denial of access to facilities, goods, services, or accommodations at the [America's Best s]tores; (ii) discrimination or harassment in the full and equal access to and/or enjoyment of facilities, goods, services, or accommodations at [America's Best s]tores on the basis of the Settlement Class Member's ambulatory disability; [or] (iii) claims for fees, expenses or costs incurred in prosecuting or settling the Action, or in connection with any claim for benefits conferred on the Class." However, Defendant will not be released by the Settlement Class Members for any monetary damage claims they may have. (Proposed Settlement Agreement ¶ 12, ¶ 1.17, ¶ 1.18 and ¶ 1.25).

While each of the various undertakings has specific time requirements as specified in the Proposed Settlement Agreement, the Proposed Settlement Agreement provides that the overall settlement process will be completed within three years of its effective date. The parties will ask the Court to dismiss the action without prejudice and to retain jurisdiction to enforce the terms of the Final Order. (Proposed Settlement Agreement ¶ 21). The parties will ask that the dismissal convert to one with prejudice on the last date of the Settlement term. (*Id.*).

HA964202

## III.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

When presented with a proposed settlement prior to a decision on class certification, the Court must first determine whether the proposed Settlement Class satisfies the requirements for class certification under Rule 23. Manual for Complex Litigation (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A class may be certified under Federal Rule of Civil Procedure 23(a) only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Hinman v. M and M Rental Cen., Inc*. 545 F. Supp. 2d 802, 804 (N.D. Ill. 2008). In addition, the plaintiff must demonstrate the applicability of one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Hinman*, 472 F. Supp. 2d at 804-05. Here, Plaintiffs are seeking certification of the Settlement Class under Rule 23(b)(2) which requires only that "the [defendant] has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." In this case, each of the prerequisites for class certification is met as illustrated below.

### 1.    There is a Sufficiently Numerous and Ascertainable Class

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)." *Hinman*, 472 F. Supp. 2d. at 805-06. A "definiteness" requirement has also been read into the requirements of Rule 23(a) and is satisfied where the proposed class "members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct." *Hinman*, 472 F. Supp. 2d at 806. Here

HA964202

the proposed Settlement Class encompasses thousands of persons throughout the nation with ambulatory disabilities who either were denied the use of Defendant's facilities or otherwise would have been unable to utilize them because of their disabilities. The Settlement Class therefore meets the numerosity requirement. *See Swanson v. Am. Consumer Indus., Inc.,* 415 F.2d 1326, 1333 n. 9 (7th Cir. 1969) (noting that a group of forty would have been sufficiently large for Rule 23(a) purposes); *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56–57 (N.D. Ill. 1996) (eighteen class members satisfied numerosity requirement); *Chandler v. S.W. Jeep–Eagle, Inc.*, 162 F.R.D. 302, 307–08 (N.D. Ill. 1995) (classes of fifty and one hundred fifty sufficiently numerous).

### 2.     The Requirement of Commonality is Satisfied.

Commonality, the second requirement of class certification, necessitates that "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). This element is met where there is a "common nucleus of operative fact," even if only one common question exists. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Commonality is often present where it is asserted that defendants have "engaged in standardized conduct toward members of the proposed class." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998); *Hinman*, 472 F. Supp. 2d at 806. Courts have certified classes in Title III ADA cases such as this one, finding that "[w]here a class of persons sharing a common disability complains of the identical architectural barrier based on the same alleged violations of law, commonality is unquestionably established." *Colorado Cross–Disability Coalition v. Taco Bell Corp.,* 184 F.R.D. 354, 359 (D. Colo. 1999). As alleged in this case, all members of the proposed class share a common disability and a common inability to utilize Defendant's facilities because the examination equipment will not accommodate their wheelchairs in violation of the ADA. Thus, commonality is satisfied.

HA964202

### 3. The Requirement of Typicality is Satisfied.

The typicality requirement of Rule 23(a)(3) focuses on whether the class representative's claims "have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993). The claims of the named plaintiff must stem from the same course of conduct that gave rise to the claims of the class, and must rest on the same legal theory. *Rosario*, 963 F.2d at 1018; *Hinman*, 472 F. Supp. 2d at 806. Typicality does not require claims to be "identical" and is generally "liberally construed." *Gasper*, 167 F.R.D. at 57.

Plaintiffs' claims against Defendant are typical of the claims of the proposed Settlement Class. Plaintiffs are themselves disabled and use wheelchairs for mobility. Plaintiffs sought eye exams but were unable to obtain them at Defendant's facilities because of their disability. This is the same claim that each of the proposed Settlement Class Members assert against Defendant. Accordingly, Plaintiffs, by pursuing their own claims, will advance the interests of the proposed Class in satisfaction of Rule 23(a)(3). *See De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983) (finding typicality where "[a]ll members of the class were subject to the same allegedly unlawful practices").

### 4. The Requirement of Adequate Representation is Satisfied.

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. To satisfy the adequacy requirement Plaintiffs, as class representatives, must establish that: (1) their claims are not antagonistic or in conflict with those of the proposed class, (2) they have sufficient interest in the outcome of the case, and

11

(3) experienced, competent counsel represent them. *Rosario*, 963 F.3d at 1018; *Hinman*, 472 F. Supp. 2d at 807.

In the case at hand, Plaintiffs' interests are entirely representative of and consistent with the interests of the proposed Settlement Class—Plaintiffs have all allegedly attempted to obtain eye exams at one or more of Defendant's facilities and, as a result of their disability, were unable to do so—and their pursuit of this matter has demonstrated that they will be zealous advocates for the Settlement Class. Thus, Plaintiffs have the same interests as the Settlement Class, with the primary interest of obtaining relief from Defendant to permit access to eye examinations for all Settlement Class Members *See In re AT&T Mobility Wireless Data Serv. Litig.*, 270 F.R.D. 330, 344 (N.D. Ill. 2010) (finding adequate representation where named plaintiffs sought the same relief from defendant's allegedly unlawful conduct as class members).

Similarly, proposed class counsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement. Moreover, proposed class counsel have regularly engaged in similar major complex litigation and have extensive experience handling class action lawsuits in both state and federal courts. Attorney Arthur Radke, for example, has been of record in over 50 class actions as both class counsel and defense counsel. Attorney Andres Gallegos concentrates a major portion of his practice in ADA compliance. The other counsel of record have additional class action and complex litigation experience. Accordingly, Plaintiff's counsel has and will continue to effectively represent the interests of the Settlement Class.

5.    **The Requirements of Rule 23(b)(2) are met here.**

In addition to meeting the requirements of Rule 23(a), a proposed class action must also meet the requirements of one of the subsections of Rule 23(b). In this action, Plaintiffs seek

certification under Rule 23(b)(2). Pursuant to Rule 23(b)(2), a class may be certified if "the [defendant] has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief . . . is appropriate respecting the class as a whole." The Complaint here requests only injunctive relief (the removal of barriers to obtaining an eye examination) and alleges that Defendant utilizes identical examination equipment in all its facilities that prevents the class members from obtaining an eye examination in violation of the ADA. Civil rights actions against parties based on broad-based discrimination are "prime examples" of actions that are properly brought under Rule 23(b)(2). *Amchem*, 521 U.S. at 613. Therefore, this case meets the requirements of Rule 23(b)(2) in addition to the Rule 23(a) requirements.

## IV.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED.

Under Rule 23(e), prior to authorizing the notification of the Settlement Class Members and granting final approval of a proposed settlement, the Court must preliminarily approve the proposed settlement as "within the range of possible [final] approval." *In re All Bromine Antitrust Plaintiffs v. All Bromine Antitrust Defendants*, 203 F.R.D. 403, 416 (S.D. Ind. 2001) (internal citations and quotations omitted). Thus, the Court must determine that the proposed settlement is of a nature that would qualify as "fair, reasonable and adequate" should it be presented for final approval. Fed. R. Civ. P. 23(e)(2).

In deciding whether to preliminarily approve a settlement, courts must consider: (1) the strength of plaintiffs' case compared to the terms of the proposed settlement; (2) the likely complexity, length, and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *In re AT & T Mobility*, 270 F.R.D. at 346. Although the "fair, reasonable, and adequate standard" and the factors used to measure it are

ultimately questions for the fairness hearing, a more summary version of the same inquiry takes place at the preliminary phase. *Id*.

The Proposed Settlement Agreement is unquestionably "fair, reasonable and adequate" to the Settlement Class.

### 1. Strength of Plaintiffs' Case vs. Proposed Settlement

The most important settlement-approval factor is "'the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Synfuel Techs., Inc. v. DHL Express*, 463 F.3d 646, 653 (7th Cir. 2006) (quoting *In re General Motors Engine Interchange Litig.*, 594 F.2d 1106, 1132 (7th Cir. 1979)). Because "[t]he essence of settlement is compromise," *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985), courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby v. Byah*, 75 F.3d 1191, 1200 (7th Cir. 1996). "Parties to a settlement benefit by immediately resolving the litigation and receiving 'some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory. Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial.'" *In re AT&T Mobility*, 270 F.R.D. at 347 (quoting *Hiram Walker* 768 F.2d at 889 (internal citations omitted)). "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985).

Here there will be significant risks and costs to the Plaintiffs if the case is not settled, the most obvious risk being that Plaintiffs may not succeed. Defendant has indicated throughout the litigation that, in the absence of a settlement, it will oppose class certification and mount a

HA964202

vigorous defense against Plaintiffs' claims. Defendant raised numerous affirmative defenses in its Answer to the Complaint and, if the case were to proceed to trial, there is a risk that Defendant may prevail on one or more of its affirmative defenses, thereby negating all relief sought by Plaintiffs here.

"Even if Plaintiffs were to succeed on the merits at some future date, a future victory is not as valuable as a present victory." *In re AT&T Mobility*, 270 F.R.D. at 347. The Proposed Settlement Agreement, on the other hand, provides substantial immediate benefits to the Settlement Class Members. Specifically, under the Proposed Settlement Agreement, Defendant has agreed to make each of its eye examination facilities accessible to the Settlement Class Members by installing chair glides or chair movers in all of its locations, with minor potential exceptions. Such installation will allow the examination chairs to be moved back, and that will permit the Settlement Class Members to receive eye examinations while remaining in their wheelchairs. This relief is directly responsive to and addresses the core allegation of the Complaint. Defendant has also agreed to survey its facilities to identify and fix certain architectural conditions that may violate the ADA and prevent access by the Settlement Class Members. In addition, Defendant has agreed to adopt policies and procedures for the servicing by its employees of mobility disabled customers.

The other provisions of the Proposed Settlement Agreement are equally acceptable, particularly when weighted against the risks of litigation. The release and covenant not to sue to be imposed upon the Settlement Class are drafted to cover only the release of the injunctive relief claims being adjudicated here. In essence, the Settlement Class is giving up its rights to sue for declaratory and injunctive relief with respect to the same conditions that are being addressed in the remediation under the Proposed Settlement Agreement. Finally, the named Plaintiffs are

15

receiving small damage awards based on the broader releases that they are giving under the Proposed Settlement Agreement (as compared to the Settlement Class) which also release all potential damage claims. Further, Class Counsel is to submit a fee petition to the Court for its reasonable and necessary fees expended in prosecuting this action. Such fees are expressly provided for under the ADA. Moreover, the attorneys' fees awarded by the Court and paid directly by Defendant will in no way diminish any recovery by the Settlement Class.

In short, Defendant has voluntarily agreed to a comprehensive settlement that squarely addresses Plaintiffs' primary allegation in their Complaint. Given the risks and costs presented by litigation, and given the fact that any relief obtained through continued litigation could be significantly delayed to the prejudice of Settlement Class Members who would be denied services while such litigation continued, the proposed settlement is "fair, reasonable and adequate" and should be preliminarily approved by the Court.

## 2. Likely Complexity, Length, and Expense of Continued Litigation

Absent a settlement, the Parties will endure protracted litigation both with respect to class certification as well as the merits of Plaintiffs' claims. The continued litigation of this case will involve class certification discovery and briefing, formal discovery, motion practice, the production of expert reports, and possibly a trial. Each phase presents significant costs. Continued litigation would ensure that Plaintiffs will continue to expend considerable time and effort that, ultimately, they may not be permitted to recoup. *Seiden v. Nicholso*n, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and effort.").

HA964202

### 3. Opposition to the Settlement

In light of the comprehensive nature of the Proposed Settlement Agreement, Plaintiffs do not believe that objections are likely or that they would be reasonable.

### 4. Counsels' Opinion

In granting preliminary approval, courts are entitled to rely heavily on the opinion of competent counsel. *Gautreaux, v. Pierce*, 690 F.2d 616, 634 (7th Cir. 1982); *Isby*, 75 F.3d at 1200. Here, both Class Counsel and counsel for Defendant are highly competent and support the Proposed Settlement Agreement. Further, there is no indication that the Proposed Settlement Agreement is the result of any collusion. *See Isby*, 75 F.3d at 1200. To the contrary, as noted above, the Settlement was the result of extensive and intensive negotiations, and the subject of the amount of Class Counsel's fees was not negotiated until *after* the parties had agreed on all substantive terms regarding benefits to the Settlement Class.

### 5. The Stage of the Proceedings and the Amount of Discovery Completed

As noted, the Parties have exchanged informal discovery whereby America's Best provided Plaintiffs' counsel with information regarding its facilities, furniture, and optometry equipment. In addition to exchanging informal discovery, the Parties have committed significant time over the past year to resolving their dispute. These factors further support preliminary approval of the Proposed Settlement Agreement. *In re AT&T Mobility*, 270 F.R.D. at 348 (granting preliminary approval where counsel had conducted a significant amount of informal discovery and dedicated time and resources to resolving the lawsuit).

In light of the relevant factors and circumstances, the Proposed Settlement Agreement is well "within the range of possible approval." *In re All Bromine*, 203 F.R.D. at 416.

## V.     THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED.

Rule 23(e)(1) requires generally that a court direct notice of a proposed settlement in a "reasonable manner to all class members who would be bound by the proposal." In the case of a class action certified under Rule 23(b)(2), however, a court is required to direct only "appropriate notice to the class" not the more stringent requirement of individual notice generally applicable to a class certified under Rule 23(b)(3). Because the settlement imposes only injunctive relief and does not foreclose individual class members from suing for individual damages they may have, the Court has discretion to eliminate the notice requirement entirely. *Fontana v. Elrod*, 826 F.2d 729, 732 (7th Cir. 1987) ("Class actions under Fed. R. Civ. P. 23(b)(2), such as *Burns*, are primarily designed for injunctive and declaratory relief and, when employed in this fashion, do not require notice nor an opportunity to opt out of the class.").

Under the proposed settlement, however, notice by publication is nonetheless provided for. Defendant has agreed to publish notice in three publications specifically targeted to the needs of the Settlement Class Members. In addition, Defendant has agreed to publish notice in a publication of general circulation, USA Today. (Proposed Settlement Agreement at ¶ 9.2). Such notice is more than adequate under the circumstances and under the requirements of due process.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) certify the Settlement Class; (2) appoint Plaintiffs René D. Luna, Rebecca Wylie, and Javier Robles as the class representatives; (3) appoint Plaintiffs' counsel of record as class counsel; (4) preliminarily approve the proposed Settlement Agreement; and (5) approve the form and methods of the proposed notice; and (6) grant such further relief as the Court deems reasonable and just.

HA964202

RENÉ D. LUNA, REBECCA WYLIE and JAVIER ROBLES, individually on behalf of themselves and all other persons similarly situated, Plaintiffs

By:     /s/        Arthur F. Radke     
                One of Their Attorneys

Vincent T. Borst (ARDC No. 06192904)
Robert M. Winter (ARDC No. 03122228)
Andrés J. Gallegos (ARDC No. 6212168)
Richard Lee Stavins (ARDC No. 02710099)
Arthur F. Radke (ARDC No. 3125515)
Scott D. Spears (ARDC No. 6275965)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
vborst@rsplaw.com
rwinter@rsplaw.com
agallegos@rsplaw.com
rstavins@rsplaw.com
aradke@rsplaw.com
sspears@rsplaw.com

Dated: September 24, 2012

HA964202

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2012, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

STEVEN THOMAS CATLETT
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL 60603
312-853-7000
scatlett@sidley.com

RACHEL B. NIEWOEHNER
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL 60603
312-853-7588
rniewoehner@sidley.com

VIKTORIA LOVEI
Sidley Austin LLP
One S. Dearborn Street
Chicago, IL 60603
312-853-7033
vlovei@sidley.com

and to the following non-participants in the CM/ECF system, by U.S. Mail:

None

/s/ Arthur F. Radke
Arthur F. Radke
Attorney for Plaintiff
Robbins, Salomon & Patt, Ltd.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
Phone: 312-782-9000
Fax: 312-782-6690
Email: aradke@rsplaw.com

HA964202